Case number 25-1106, the Estate of Stephen M. Jennions, Petitioner, v. Commodity Futures Trading Commission. Mr. Hasegawa for Petitioner, Ms. Berry for Respondent. Your Honors, I'm going to place the court to Stephen Hasegawa for the Estate of Stephen Jennions. The CFTC's denial of an award—oh, I'm sorry, I'm going to reserve two minutes of my time for law for two reasons. First, the CFTC's determination that Jennions was not an original source of the information that caused the CFTC to open its investigation is not supported by substantial evidence. In fact, it's contradicted by the only evidence in the record on that point. And second, the CFTC did not follow the procedures that are mandatory in the CFTC's own regulations for the resolution of whistleblower award claims. That irregular procedure led to an incorrect result. So I'd like to first address substantial evidence. The uncontroverted record establishes three facts that refute the stated basis for the CFTC's denial of an award. First, Mr. Jennions was an original source of information in the Bloomberg article. Second, the Bloomberg article as a whole, including information of which Mr. Jennions is the original source, caused the opening of the CFTC's investigation. And third, Mr. Jennions' information was sufficiently specific, credible, and timely to cause the opening of the investigation as evidenced by the fact that it did. So as to those facts, I would like to address each of them in turn. As to the first fact, the record is uncontradicted that Jennions was an original source of the information in the Bloomberg article. That article reported on allegations of the manipulation of a benchmark foreign exchange rate, the WMR rate, and it quoted the UK Financial Conduct Authority's statement that it was, quote, aware of these allegations, close quote. The CFTC acknowledges that it understood the quote from the FCA to mean that the FCA was aware from an independent source of, quote, allegations of manipulation of the fix, end quote, meaning the- So you're saying that the original source, a source that Bloomberg, the Bloomberg article identifies is the UK FCA, and then in turn that Jennions was a- had spoken to the UK FCA? Yes, that's right. Mr. Jennions was the original source of information that the FCA provided to the Bloomberg reporter and was quoted in the Bloomberg article. And how do we know that? So we know that because the record is uncontradicted. First of all, at 329 to 331 of the record, the FCA provides a letter where it says Mr. Jennions was, in fact, the original source of its information. In that same passage, 329 to 331, it says that in February- sorry, January of 2013, Mr. Jennions provided it information. In February of 2013, Mr. Jennions sat for a day-long interview with the foreign- the UK Financial Conduct Authority, and that's also in the record at page 82. In fact, the record establishes that at the time of the Bloomberg article, Mr. Jennions was the only source of the FCA's knowledge since, as the FCA points out, the FCA had only done two things at that point. One was gather information from Mr. Jennions, and the other was gather- collect some data on trades without yet identifying anything of concern in that data. And that's in the record at 228, 246, 264, 282, and 300. So we know that Mr. Jennions was the only source of the information that the FCA provided in the Bloomberg article. And the CFTC acknowledges that it understood the FCA's quote in the Bloomberg article to mean that the FCA was inquiring into the conduct, a defined term that meant the allegations of manipulation of benchmark currency rates, including the WMR rate. In other words, the same allegations that are reported elsewhere in the Bloomberg article. And that's at 347 to 48, 359 to 60, 371 to 72, 383 to 84, and 395 to 96 of the record. Now, the CFTC is taking the position that Mr. Jennions was not an original source of that information, because Bloomberg did not get the information directly from Mr. Jennions. But the original source provision is asking who is the original source, what is the origin of this information, not what- But didn't Mr. Jennings write to the FCA in an email in January of 2013 and never mentioned that he was a source for the Bloomberg article? So January 2013 was before the Bloomberg article. January 2013, Mr. Jennings first wrote to the FCA and said, I'd like you to understand that the banks are manipulating the WMR rate. And then in February of 2013, they sat down and interviewed him. In June of 2013, the Bloomberg reporter reached out to the FCA and said, we're aware of these allegations from other sources of this information. And the FCA said, yes, we also have a source that is telling us the same information, that there's manipulation of the WMR rate. And they were quoted in the article as saying that. So it is true that Mr. Jennings did not speak directly to the Bloomberg reporter, but that's not necessary for application of the original source test. Because again, the words original source and note origin, what is the origin of the information? And it's true that the Bloomberg reporter received that information from first, in the last instance, from the FCA. But in fact, the origin of the information was Mr. Jennings. And the record is absolutely clear. But Mr. Jennings, there's no evidence in the record that he directly spoke to Bloomberg, right? He did not speak directly to Bloomberg. So Bloomberg calls the FCA, right? That's correct. So they've already got a story and they call the FCA. So by definition, they knew something about this before they contacted the FCA. It is true that Bloomberg had other sources aside from the FCA. Our point is that the FCA was an additional source. The FCA provided information to the Bloomberg reporter that said, yes, we also have the same information from an independent source that this rate is being manipulated. And as a matter of fact, the information is sufficiently serious for us to be investigating. We've opened an inquiry, is what the FCA said. And that information, of course, through the Bloomberg article, reached the CFTC, which... I'm not sure how that can be original source information in the sense that if Bloomberg already has, it was at five different people in the business who it had talked to, it had information. It turns out that in parallel in the UK, there's something going on. Mr. Jennings was the source for the UK FCA and Bloomberg confirms that. But how could it be the original source if Bloomberg already had information from these other five? Well, Your Honor, the Bloomberg article as a whole contains multiple sources. And each of those sources is an original source. I'm not suggesting that Mr. Jennings was the only source in the article. I'm saying that Mr. Jennings was the original source of some of the information in the Bloomberg article. So there were five traders, that's true. There was also a sixth source, the FCA, quoted in the article as saying, we are aware of these allegations, which as again, the CFTC has conceded means that the FCA was itself aware from an independent source of the same information as the other traders. So there were six sources of that information and all six of our original sources under the original source rule. Again, what the CFTC has tried to do in reading that is to say the word from in the definition of original source that the Bloomberg reporter needed to obtain that information from the source, it ignores the fact that the key to the original source test is trying to find the origin. And the term from is a term that encompasses that particularly in the context of an original source examination. So I'd like to go on to the second fact. The record is clear and uncontroverted that it was the Bloomberg article as a whole that caused the CFTC to open its investigation and not any particular information in it. The CFTC acknowledged 21 times in the record that the Bloomberg article was the precipitating cause of its investigation. And it refers to it only as the Bloomberg article. It doesn't say five traders in the Bloomberg article. It doesn't say any particular portion of the Bloomberg article. That's it. What's your best authority for if we were to find that he was one of the sources indirectly for the Bloomberg article through the FCA and that the Bloomberg article caused the investigation, what's your best authority that makes him an original source? Well, your honor, first I would say there are the textual clues and second the contextual clues. The textual clue is that the original source question is at its base, as the words original source say, we're looking for the origin of the information, not the last most recent source of And if the CFTC had intended to rely only on the most recent source of information, it could have written a regulation that said that. Instead, it said we want to find out who's the original source, not a secondary or derivative source. Who is the original source of this information? Can you tell me a case where the court has interpreted the rule as you are asking us to? Unfortunately, your honor, there are very few authorities interpreting the statute, and in particular, I believe there are none interpreting the original source language. The statute requires causation as well as original source, right? Well, causation of an enumerated action. Led to the successful enforcement. That's right. That's right. And usually, when statutes require causation, courts read that to mean proximate cause, substantial cause, not just any old trivial cause. So what's your best argument? He's one of six sources comes to the CFTC indirectly. That sounds like a pretty marginal cause to me. It's not, your honor. First of all, I would disagree with the notion that it is a trivial cause. In fact, it was the information that started a sister agency on its process of engaging in an investigation that was performed in parallel with the CFTC's investigation that led to it. Substantial for UK enforcement, no doubt, but the causal chain was different. Well, I think it's both because to the extent that there are six different sources in the Bloomberg article, there's nothing in the statute that requires that there only be a single source. And in fact, it's quite common in both the CFTC context and in the SEC, Dodd-Frank whistleblower regulations for there to be multiple whistleblowers who receive awards. They make that decision all the time. And in fact, if there were six people who came in this instance and said, I was the original source of the Bloomberg article and they complied with all of the other requirements of the statute, the CFTC would be well within its rights to say each of the six of you is entitled to an award because each of the six of you was an original source of the information that caused us to open the investigation. The CFTC though concludes that the Bloomberg article didn't actually recount any of Jennings' information. It just recounted the fact of the UK FCA having talked to him, but there's not like details of the information. The article is really based on the information provided by the other five. Well, but Your Honor, the article, it only quotes the portion, the FCA to the extent that it says that the FCA was aware of these allegations, but the CFTC acknowledges that that is a statement by the FCA that it has an independent source for the same information that is being reported elsewhere in the article. And that's in the record at 228. But that's not even a statement by the FCA that it is conducting an investigation. It also says that. The FCA also says that. It says we're inquiring of the relevant parties in the article. It says we're speaking to the relevant parties. That doesn't mean that they're undertaking an investigation. It was, Your Honor, in the formal processes of the FCA, my understanding is that the inquiries are precedent to an investigation, but they are all part of a chain of events that leads to what they refer to internally, formally as an investigation. But in the record at 329 to 331, the FCA says very clearly that Mr. Jennings was the source of the information that they were relying on in reaching out and beginning to inquire of those relevant parties. And then, of course, the FCA's inquiries became an investigation, and they ultimately led to the recovery of substantial funds in parallel with the CFTC's investigation. But my point is that if the Bloomberg article was the candidate, and the Bloomberg article uses the FCA as one of the sources, and all the FCA says is that we are aware of allegations and we are speaking to relevant parties, that's not even corroborating like that the FCA believes that any of this is true or has any merit. It's just saying we're talking to people. So, it's not even relaying the substance of what Mr. Jennings told them, right? So, with respect to the other people that Bloomberg spoke to, they gave them details of the manipulation that they believed was going on. But what they got from the FCA, at least what's reported in the article, is just that we're aware of some allegations and we're speaking to people, but not even like corroborating anything or passing on substantively anything that Mr. Jennings told. I think that it's important to read the FCA's quote as having content. And the content of the quote is these allegations, meaning in the context of the article, it can only refer to the other information, the information elsewhere reported in the article. In other words, the FCA was aware of the same information that is being reported elsewhere. That's what the FCA was saying. And it's true that it was shorthand. Often reporters don't include the full quote. I know that from experience. But the fact is that the CFTC itself acknowledges that what the FCA was talking about was its awareness from an independent source of allegations of manipulation of the foreign exchange, the key foreign exchange benchmark rate, the WMR rate. And that's in the record multiple times, 347 to 48, 359 to 60, 371 to 72, 383 to 84, 395 to 96. It's also separately in there at 228, 246, 264, 282, and 300. And we do also know, contrary to the post hoc arguments in the CFTC's brief and in the final order, that the information from the FCA was important to the CFTC. We know from the record that the first thing that the CFTC did upon opening its own investigation was reach out to the FCA. That's in the record at 228, 246, 264, 282, and 300. Oh, I'm sorry. That's wrong. That's in the record at 443, 447, 451, 455, and 459. And then shortly thereafter, it convened an investigative team. And the first thing that the investigative team did was reach out to the FCA again. That's in the record at 228, 246, 264, 282, and 300. So, the record itself contradicts any argument that the FCA's information in the Bloomberg article was not important. The first thing that the CFTC did twice when it opened its investigation was reach out to the CFTC. I guess my point, not to beat the dead horse, is that even granting all of that, just because that might be the first place they went to try to seek some help or to get some corroborating information, that does not prove that that is what caused them to open the investigation. If I see that, you know, all the cookies have been eaten in my kitchen, the first person I might, like, ask as to why all the cookies are gone might be, you know, my oldest child or something. But that doesn't mean that, you know, I've been told anything. I just know that that's a good person to ask, right? Well, I would say, Your Honor, that what the record does say is that the article was the cause of the opening of the investigation. And it says it quite clearly, and like I said, it says it 21 times. It's in the record, all over the record, and there's not a single thing in the record, not a single suggestion anywhere in the record other than the final order, which doesn't cite any of the evidentiary record. There's not a single thing that suggests that it is any particular portion of the article. It was the article itself, and that's the evidence that we have in the record, that the entirety of the article is what caused the opening of the investigation. And in that instance, being an original source of one original source, not necessarily the only original source, but being an original source of the information in the article is sufficient to trigger the rule that Mr. Jennings is an original source of the information that led to the opening of the investigation. I wonder if you could talk about the argument that the Commission exercised undue control, that the Office of General Counsel improperly participated in or controlled the Commission's decision. Thank you, Your Honor. It is true. We do not know exactly what procedures the CFTC used to reach its decision, but we know that they are not the procedures that are because the regulation requires that the whistleblower office perform certain acts, and that we perform certain acts with respect to the whistleblower office in order to get through the process. And the whistleblower office, in fact, was completely cut out of that process. 17 CFR 165.7G requires that the whistleblower office send us the preliminary determination. That's prior to the final order. We did not receive that from the whistleblower office. We received it from the Office of Chief Counsel of the Division of Enforcement, contrary to what the regulation requires. We wrote back, as the regulation requires us, we wrote back to the whistleblower office, and we included the Office of Chief Counsel because it came from them, and we were told, don't write to us. Don't write to the whistleblower office. Write to us, the Office of Chief Counsel. That's at 344-45. We continued to correspond with the whistleblower office because, again, that's what the regulation requires us to do in 165.7G-2, and we were told, again, in the record at 434 from the OCC, stop writing to the whistleblower office. Write to us, the Office of Chief Counsel. So we know for a fact that the whistleblower office was cut out of the process. Because of that, we asked the CFTC as part of when we were asking it to prepare a record, an administrative record, to tell us what role the Office of General Counsel for the CFTC had in the process and how the Claims Review Staff, or the CRS, was constituted. That's in the record at 431-432. I guess, I'm sorry, Mr. Hasegawa, I'm not entirely following what the core of the argument is. It seems like I took your brief to be saying that somehow the Commission's regulations limit the Office of General Counsel's ability to participate in the Claims Review process. They do have a, they're tasked with doing a legal sufficiency review, and they are, the CRS can't be composed of OGC staff. But I'm not sure that I can infer from that that there's, it can't otherwise coordinate. And what is, so what's the, just in common-sense terms, what is the nefarious or irregular, erroneous process that you're actually complaining about? Your Honor, in common-sense terms, the regulation provides one role and one role only for the Office of General Counsel, and that's legal sufficiency review. And it does that for a very important reason. And in the process of doing that, by the way, it excludes the Office of General Counsel from the Claims Review staff of the CRS that makes the initial determinations and recommendations of awards. It does it for a very important reason, which is that the CFTC was very concerned to make sure that the legal sufficiency review was being performed by an office that did not have a stake in the merits determination. Because we know that if you want an unbiased review of the legal sufficiency of an action, you should not make the person who had input into that action itself the person who's reviewing its legal sufficiency. Otherwise, you get bias in favor of confirmation. And in this instance, we don't know exactly what role OGC played, although certainly CFTC is not denying that it played an important role. I think that it is worth noting for context that this is one of the two largest recoveries that the CFTC has ever made, the two largest whistleblower applications that there have been. And in both of those instances, OGC has usurped the role of the whistleblower office in making those determinations. And certainly, since they have departed from the procedures, we have rebutted the presumption of regularity and can suggest that there maybe was something else going on when they were deciding. You still have to, under the APA, there's still a rule of prejudicial error. You still have to show that this isn't that, okay, there might have been error, but that it's not harmless. And I don't see anywhere in your brief where you address that aspect of 706. Your Honor, I do think that it was not harmless error. And the reason I think that is because the legal sufficiency review, which is all of the stuff that we've been arguing about, both in this hearing and in the underlying briefs below, the only review we got was by a party who seemed to be very interested in confirming the underlying decision to deny an award. And we saw that it manifest itself in a series of shifting explanations for what was underlying the CFTC's decision. First, it was the self-reporting, and then it was the Bloomberg article as a whole, and then in the final order, unsupported by any evidence, it was only really a portion of the information in the Bloomberg article. We also saw the assertion of the 180-day rule, which we demonstrated was not applicable since it was not enacted in the regulation until long after we had submitted our materials to both the FCA and the CFTC. They forewent that in the final order but seemed to have resurrected it, at least in shadow form in the briefs before this court. What we see is an agency that is looking for reasons to support the decision, the merits-based decision that was made. And we think that the participation of the OGC in those merits-based decisions was what's causing this bias in favor of confirmation rather than the neutral legal sufficiency related to which we're entitled. All right. We'll hear from you on rebuttal. You've reserved some time, and we need to hear from Ms. Berry. Am I pronouncing it right? Yes. Good afternoon. May it please the Court, Ragini Berry for the respondent, Commodity Futures Trading Commission. The bottom line here is the CFTC did not obtain petitioner's information from any source before the Commission settled the cases for which he now seeks a whistleblower award. This fact alone is determinative of the appeal because if he did not timely provide qualifying information, he cannot have provided information that led to the successful enforcement actions as is required for an award. This morning, I'd like to, or this afternoon, excuse me, I would like to address petitioner's derivative source theories as various theories, none of which entitle him to an award. Now, there are two rules that are applicable here. The first is 165.2i, under which petitioner must have provided information that was sufficiently specific, credible, and timely to cause the CFTC to investigate. And that also reports the conduct that formed the basis of the successful enforcement action. The second rule is the derivative source rule, under which if the Commission obtained petitioner's qualifying information that I just described from another source, then he may qualify for an award. Petitioner relies exclusively on the FCA's quote to argue that it was sufficient for him to report the conduct. But the FCA's quote in the Bloomberg article does not satisfy the requirements of 165.2 because all it does was give the FCA's information that it was aware of the allegations and that the FCA was speaking to relevant parties. None of it provides information that satisfies rule 165.2's specificity requirements about conduct, about the underlying conduct of the CFTC charge. Now, I think petitioner recognizes this. And in fairness, it would be, you could read that as saying that they are aware of allegations of the same nature as the other allegations that Bloomberg is reporting. Because otherwise, why is it even relevant for them to say anything? That still wouldn't make this petitioner's information. The FCA's awareness of the other allegations is the FCA's information. It may be admitting that they possess similar information, excuse me, but that quote still does not report the conduct with any specificity. So, I guess there's two points that I hear the petitioner making. One is that by saying we're aware of these allegations, they mean specific allegations, and they're aware of them somebody has told them of specific allegations. So, A, they wouldn't say that unless they're talking about allegations of the same ilk as the ones that Bloomberg is reporting. And then I hear your friend on the other side saying, B, it's uncontested that at that point in time, the information that the FCA had received was from Mr. Jennings. So, together, those two things show that he was an original source. That's the argument. I don't think, excuse me, I don't think that those together show that he was an original source of the other allegations that the Bloomberg article details. Those were sourced to five other traders with firsthand information. I don't think anything in the FCA's quote actually corroborates what the Bloomberg article reports. It simply says we are aware. It doesn't provide evidence of the misconduct. We are aware of these allegations, not even evidence. Right. There's no evidence that the FCA did not provide any corroborating evidence. And I believe they also argue that the two are inextricable. But I think the substantive allegations are easily understood without reference to the FCA's quote. The other argument that they make is that the commission essentially should be a stop from determining that the FCA quote was insufficient because declarations state that it was the Bloomberg article that prompted the investigation, and it doesn't specify. But the question here for petitioners' qualifications for an award is not what ultimately prompted the CFTC to investigate. The question is, did his information lead to the successful enforcement actions? And again, for that, you have to provide specific, credible, and timely information. The fact that the Bloomberg article prompted the investigations show at most that maybe some information in the article would satisfy Rule 165.2, not that all of it did. And if we went with petitioner's theory, you have several sources for the article, including a Forex trading advisor who said the Forex market is the Wild West, a fellow at the London School of Economics who stated that price rigging is extremely costly to society, a University of Florida professor who said it would be difficult. That's really, I mean, let's be serious here. I mean, we wouldn't look at everything that was quoted in the article. We would look at who was quoted or who provided information on the article with respect to the wrongdoing. Those people aren't speaking about the wrongdoing. I don't think the petitioner is arguing that anybody who's quoted in the Bloomberg article was an original source. Well, he's not arguing that they're original sources, but he's saying that we cannot walk away from the entirety of the Bloomberg article. And that brings us back to the point that the question is, was the petitioner's information specific, credible, and timely to cause CFTC to investigate? That we don't focus on the entirety of the article. We focus on what was petitioner's information. And the only information he points to in the article is potentially his information is this FCA quote, which, again, we do not believe is petitioner's information. It's the FCA's information. And even if it was his information, that quote by itself does not provide the information that's required under 165.2i. So I just want to make sure that we're clear and I drill down on this issue. If Bloomberg speaks to five different people and they say that, you know, these specific types of actions are being undertaken and they are manipulating this market, and then Bloomberg calls the FCA and says, we're running a story about these sorts of allegations that people are undertaking these sorts of actions to manipulate the market. And the FCA says, yeah, we're already aware of allegations that those actions have happened. Isn't that essentially confirmation that they have been told the same thing by one or more other people? It confirms that someone has alleged to the FCA that this is happening. It does not confirm that the FCA has witnessed the conduct that is reported firsthand from firsthand sources in the Bloomberg article. Understood that the FCA hasn't confirmed it. So what does the confirmation by the FCA have to do with applying the original source? So the question is whether the FCA is providing information about the conduct. So providing information about receiving allegations is not the same as providing specific conduct that of the CFTC's action. Why not? I mean, if somebody says, okay, here's this thing, I'm an American investigator, American government agency investigator, and I call my counterpart and say, we're seeing this kind of conduct that we think is unlawful, ABCDE, and the counterpart says, yeah, we're seeing that too. And we're talking to people and oh, who are you talking to? Oh, that's not someone we've talked to. That doesn't count as original source information just because it's a confirmation of someone else's description? That's different from what we have here. Is it? Yes. Here we're saying the FCA is saying we have been told of these allegations. Not we are also seeing this conduct. Let's talk. If it's told by someone who is an industry insider like Jenyans, why isn't, how is that different? Well, we can hear from the Bloomberg article, we don't know that that's what's happening. Your friend on the other side has said we do know that, that Bloomberg, that the FCA says that, or Bloomberg, I guess, says that this is our only source for the FCA. Right. So I'm not disputing, and we're not disputing that Jenyans may have been a source for the FCA. Are you disputing that he was the only source for the FCA as of the time of the Bloomberg article? I don't, I believe he probably was the only source for the FCA, but I don't know that. And I don't know that that answer is in the record. But the issue is when the CFTC received information from Bloomberg, did it receive Jenyans' information? It did not. Nothing that Jenyans reported to the FCA in the January 2013 email is attributed to the FCA in the Bloomberg article. So any sort of allegations that could match the specific allegations that Bloomberg obtained from these five other traders has not been reported through Bloomberg from the FCA. So that's the difference. If the FCA had said we have a whistleblower who has provided us with the same information, or we have a source that provided us with reports that match this, that gets you a little bit closer, a lot closer. You're saying relevant parties. So it depends on whether you say source versus relevant parties. We don't know who relevant parties are. That doesn't exclude sources. It doesn't exclude, but that's not the test either. You have to have credible, specific, timely information about the conduct. It's not enough just to have your information in an article that caused the CFTC to investigate. All right. We respectfully ask the court to affirm the commission's decision. Thank you. And you have two minutes late in the day, Mr. Hasegawa. Thank you, Your Honor. I know that we're all getting hungry. I just want to address a couple of things. First of all, the CFTC's view of the specific, credible, and timely information requirement. In the briefs, the CFTC tries to separate that into two requirements. One, was the information under some unspecified standard sufficient? Was it specific, credible, and timely? And separately, did it cause the opening of the investigation or another of the enumerated actions? In fact, that's a misreading of the regulation. The regulation has a single requirement, and that is, was it sufficiently specific, credible, and timely to cause the investigation? And if it did that, then that is satisfaction. If you separate it into two, you read the words sufficient to cause out of the regulation, and that eliminates both the defined regulatory threshold that you need to meet and the causal test that you can use to satisfy it. In this case, the record, again, we are stuck with the record, and the record says that the that caused the CFTC to open its investigation. I think that it is not disputed that, in fact, the record establishes clearly that the only information that the FCA had at the time of the Bloomberg article was the information that comes from Mr. Jennings. Again, that's at 329 to 331 and 82 of the record. The CFTC has said repeatedly that the FCA had not done anything else other than obtain data on trades without identifying anything of concern in that data. That's 228, 246, 264, 282, and 300. So the FCA's quote can only be attributed to an original source of Mr. Jennings. There are no other sources in the record, at least, that suggest that there was anybody else behind that information. And with that, I would say we request that the panels, that the court vacate the order denying an award, order the CFTC to make an award and remand to the CFTC for consideration of the appropriate amount within the 10 to 30 percent statutory range within which to make that award. Thank you, Your Honor. Thank you. The case is submitted.
judges: Pillard; Wilkins; Katsas